**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

02 JAN 17 PM 5: 04

ANNIE L. DRAKE, ALVIS F. AMBROSE                :
HOLLIS B. BARRON, NANCY GAINES              :
DWIGHT D. MYRICKS, BRENDA WHITE          :
and CLAUZELL R. WILLIAMS,                            :
                                                                        :
      **Plaintiffs,**                                              :      **CIVIL ACTION NO:**
                                                                        :
**v.**                                                                  :
                                                                        :      **Jury Trial Demanded**
**FEDERAL RESERVE BANK**                          :
                                                                        :      CV-02-J-0146-S
      **Defendant.**                                           :

**COMPLAINT**

CV-03-B-0163-S

This action is brought to redress a pattern and practice of employment

discrimination, based on race pursuant to Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. §

1981 and 1981(a) and sex pursuant to 29 U.S.C. §206(d), otherwise known as the

Equal Pay Act.  Plaintiffs allege a continuing violation of Title VII of the Civil Rights Act

of 1964, 42 U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991, 42

U.S.C. § 1981 and 1981(a) and 29 U.S.C. §206(d).

**I.      JURISDICTION**

      1.      Plaintiffs invoke this Court's jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1343 and 28 U.S.C. §§ 2201 and 2202.  This suit is authorized and instituted

pursuant to the Act of Congress known as the Civil Rights Act of 1866, 42 U.S.C. §

1981, and 1981(a); the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as

amended by the Civil Rights Act of 1991 and 29 U.S.C. §206(d), otherwise known as

the Equal Pay Act.. The jurisdiction of this Court is invoked to secure protection for and

to redress the depravation of rights secured by Title VII, 42 U.S.C. § 1981, and 1981(a)

and the Equal Pay Act. providing for injunctive as well as other relief against racial and

sex discrimination.

2.      Plaintiffs have fulfilled all conditions precedent to the institution of this

action under Title VII of the Act of Congress known as the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.,* as amended by the Civil Rights Act of 1991.  Plaintiffs timely

file this action within ninety (90) days of the receipt of their notice of right to sue

pursuant to Title VII.  Further, filed suit within the two years statue of limitation set forth

under 42 U.S.C. § 1981 and the Equal Pay Act.

3.      The venue of this action is properly placed in the Northern District of

Alabama pursuant to 28 U.S.C. § 1391 because plaintiffs' claims arise in this district.

## II.    PARTIES

4.      Plaintiff, Annie L. Drake, is an African American, female citizen of the

United States.  During all times material to the averments herein, the plaintiff was a

resident of Birmingham, Alabama which is located in Jefferson County.  The plaintiff is

over the age of nineteen.  Further, the plaintiff is an "aggrieved person" under Title VII

of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights

Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

5.      Plaintiff, Alvis Ambrose, is an African American, female citizen of the

United States.  During all times material to the averments herein, the plaintiff was a

resident of Birmingham, Alabama which is located in Jefferson County.  The plaintiff is

2

over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

6.    Plaintiff, Hollis Barron, is an African American, male citizen of the United States. During all times material to the averments herein, the plaintiff was a resident of Birmingham, Alabama which is located in Jefferson County. The plaintiff is over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

7.    Plaintiff, Nancy Gaines, is an African American, female citizen of the United States. During all times material to the averments herein, the plaintiff was a resident of Birmingham, Alabama which is located in Jefferson County. The plaintiff is over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

8.    Plaintiff, Dwight D. Myricks, is an African American, male citizen of the United States. During all times material to the averments herein, the plaintiff was a resident of Birmingham, Alabama which is located in Jefferson County. The plaintiff is over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

9.    Plaintiff, Brenda White, is an African American, female citizen of the

3

United States. During all times material to the averments herein, the plaintiff was a resident of Birmingham, Alabama which is located in Jefferson County. The plaintiff is over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991 and 42 U.S.C. § 1981 and 1981(a).

10. Plaintiff, Clauzelle R. Williams, is an African American, female citizen of the United States. During all times material to the averments herein, the plaintiff was a resident of Birmingham, Alabama which is located in Jefferson County. The plaintiff is over the age of nineteen. Further, the plaintiff is an "aggrieved person" under Title VII of the 1964 Civil Rights Act 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 and 1981(a) and 29 U.S.C. §206(d), otherwise known as the Equal Pay Act.

11. Plaintiffs are informed and believe, and therefore aver, that defendant, Federal Reserve Bank, is a quasi-federal entity organized and existing under the laws of the state of Alabama. The plaintiffs aver that the defendant is qualified to do business in Alabama and does business in Jefferson County. Plaintiffs are informed, believe and therefore aver that defendant, Federal Reserve Bank, is an "employer" within the meaning of § 701 (b) of Title VII in that, during all times material to the averments of this complaint, it has engaged in an industry affecting commerce and has employed more than the requisite number of persons for the requisite duration under Title VII. Further, because of its quasi-federal status, the defendant is an entity subject to suit under 42 U.S.C. § 1981 and 1981(a) and 29 U.S.C. §206(d), otherwise known as

4

the Equal Pay Act.

### III.   STATEMENT OF FACTS

####   A.   Annie L. Drake

12.    Plaintiffs re-allege and incorporate by reference paragraphs 1-11 above with the same force and affect as if fully set forth herein and further state as follows:

13.    Annie L. Drake (hereinafter "Drake" or "plaintiff(s)") began working with the Federal Reserve Bank on May 16, 1966 as a Cleaner.  She moved to the mail clerk classification in approximately 1972.  Drake has been classified as a mail clerk for approximately thirty years.

14.    Despite her desire to move to different lines of progression and attain supervisory and/or managerial positions within her line of progression or others within the Federal Reserve Bank (hereinafter "defendant" or "defendant company"),Drake was precluded because of her race, African American.

15.    Throughout her career and just prior to her filing a charge of discrimination with the EEOC, Drake was interested in advanced positions.  However, she was consistently passed over for promotions and less qualified white employees were awarded the positions.  Upon information and belief, the defendant company often failed to post or otherwise advertise positions.

16.    An example of the defendant's discriminatory conduct with respect to Drake and promotions would be the Lead Clerk position.  Drake desired the position and it was awarded to Teri Kennedy, a less qualified white employee.  The defendant did not consider Drake for the promotion, despite her qualifications and her ability to

5

perform the duties of the position. This, of course, was not the sole promotional opportunity that Drake was denied as there were many jobs - some of which were never posted or advertised - for which she was passed over in favor of less qualified white employees.

17.     Employees were given formal annual performance reviews. Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive monetary increases, the defendant engaged in a discriminatory pattern and practice of rating Drake and other African American employees below the actual rating achieved.

18.     Drake was a victim of the defendant's discriminatory rating practices and received several diminished, underrated or underscored evaluations. Though Drake did not receive evaluations that fell below the standards that were set for her position, she typically did not receive an accurate rating. There have been many instances throughout her employment and just prior to filing a charge of discrimination where Drake did not receive an "outstanding performance" rating or an "exceeded performance requirements" rating despite performing at such levels the preceding year.

19.     Drake was also denied training opportunities because of her race, African American. Upon information and belief, Drake's white counterparts were given training opportunities that would allow them to change lines of progression and/or attain advanced positions in their current lines of progression. Drake was not afforded similar opportunities. Indeed, Drake remained in the same line of progression for over thirty years. Upon information and belief, white employees are and have always been able to

6

move freely through different lines of progression, learn different disciplines and generally advance in their careers with the defendant.

20.     Drake was disparately and discriminatorily compensated because of her race, African American.  In addition to the fact that the defendant has discriminatorily maintained Drake in a job classification that pays less than other classifications, the defendant has discriminatorily precluded Drake from advancing through pay grades at a rate similar to that of her white counterparts.  The defendant also discriminatorily denied merit and performance based increases to Drake because of her race.  Drake was also precluded from taking advantage of an "early-out" retirement opportunity.  Similarly situated white employees were permitted to take advantage of the early out.  The defendant did not allow Drake to do so because she'd filed a charge of discrimination with the EEOC.

## B.     Alvis Ambrose

21.     Alvis Ambrose (hereinafter "Ambrose" or "plaintiffs") began working with the Federal Reserve Bank in May, 1974 as a Sorter Operator Trainee.  She moved to the check collection clerk classification in approximately 1975 and has remained in this line of progression since, with the exception of an approximate one year separation.

22.     Despite her desire to move to different lines of progression and attain supervisory and/or managerial positions within her line of progression or others within the defendant, Ambrose was precluded because of her race, African American.

23.     Throughout her career and just prior to her filing a charge of discrimination with the EEOC, Ambrose was interested in advanced positions.  However, she was

7

consistently passed over for promotions and less qualified white employees were awarded the positions. Upon information and belief, the defendant company often failed to post or otherwise advertise positions.

24.    An example of the defendant's discriminatory conduct with respect to Ambrose and promotions would be the Lead Clerk position. Ambrose desired the position and it was awarded to Beth St. John, Sydney Blackwell and Victoria Hitchcock, less qualified white employees. The defendant did not consider Ambrose for the promotions, despite her qualifications and her ability to perform the duties of the positions. The defendant also overlooked Ambrose for the Quality Analyst position. The defendant awarded the position to Ashley Patrick, a less qualified white employee. Jeremy Whitley, Blake Andrus and Michael Jadwin were hired into supervisory or managerial positions in the payment services line of progression. Ambrose was denied the opportunity to compete for or attain these positions.    These, of course, were not the sole promotional opportunities that Ambrose was denied as there were many additional jobs - some of which were never posted or advertised - for which Ambrose was passed over in favor of less qualified white employees.

25.    Employees were given formal annual performance reviews. Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive monetary increases, the defendant engaged in a discriminatory pattern and practice of rating Ambrose and other African American employees below the actual rating achieved.

8

26.    Ambrose was a victim of the defendant's discriminatory rating practices and received several diminished, underrated or underscored evaluations. Though Ambrose did not receive evaluations that fell below the standards that were set for her position, she typically did not receive an accurate rating. There have been many instances throughout her employment and just prior to filing a charge of discrimination where Ambrose did not receive an "outstanding performance" rating or an "exceeded performance requirements" rating despite performing at such levels the preceding year.

27.    Ambrose was also denied training opportunities because of her race, African American. Upon information and belief, Ambrose's white counterparts were given training opportunities that would allow them to change lines of progression and/or attain advanced positions in their current lines of progression. Ambrose was not afforded similar opportunities. Indeed, Ambrose remained in the same line of progression for nearly thirty years. Upon information and belief, white employees are and have always been able to move freely through different lines of progression, learn different disciplines and generally advance in their careers with the defendant.

28.    Ambrose was disparately and discriminatorily compensated because of her race, African American. In addition to the fact that the defendant has discriminatorily maintained Ambrose in a job classification that pays less than other classifications, the defendant has discriminatorily precluded Ambrose from advancing through pay grades at a rate similar to that of her white counterparts. The defendant also discriminatorily denied merit and performance based increases to Ambrose because of her race.

9

C.    **Hollis Barron**

29.    Hollis Barron, (hereinafter "Barron" or "plaintiffs") began working with the defendant as a Management Intern on June 19, 1989. He moved to Check Collection Supervisor in 1990 and was demoted in 1995. Barron is currently a Senior Clerk in security services.

30.    Despite his desire to move to different lines of progression and attain advanced positions within his or other lines of progression, Barron was precluded because of his race, African American.

31.    Throughout his career and just prior to his filing a charge of discrimination with the EEOC, Barron was interested in advanced positions. However, he was consistently passed over for promotions and less qualified white employees were awarded the positions. Upon information and belief, the defendant company often failed to post or otherwise advertise positions.

32.    An example of the defendant's discriminatory conduct with respect to Barron and promotions would be the Supervisor in Payer Bank Services position. Barron  desired the position and it was awarded to  less qualified white employees. Also, the plaintiff was denied promotions to the position of Lieutenant in Protective Services.   The defendant did not consider Barron for the promotion, despite his qualifications and his ability to perform the duties of the position. Jeremy Whitley, Blake Andrus and Michael Jadwin were hired into supervisory or managerial positions in the payment services line of progression. Barron was denied the opportunity to compete for or attain these positions. These, of course, are not the sole promotional

10

opportunities that the plaintiff was denied as there were many jobs - some of which were never posted or advertised - for which the plaintiff was passed over in favor of less qualified white employees.  Further, there were occasions in which Barron was required to train less qualified white employees who were eventually selected for advanced positions that he sought or would have sought had he known of the opportunity to do so.

33.     Employees were given formal annual performance reviews.  Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive monetary increases, the defendant engaged in a discriminatory pattern and practice of rating Barron and other African American employees below the actual rating achieved.

34.     Barron was a victim of the defendant's discriminatory rating practices and received several diminished, underrated or underscored evaluations.  There have been many instances throughout her employment and just prior to filing a charge of discrimination where Barron did not receive an "outstanding performance" rating or an "exceeded performance requirements" rating despite performing at such levels the preceding year.  There were at least two occasions where Barron received a rating that was lower than meets expectations.  These ratings were based on his rating supervisor's discriminatory animus.

35.     Barron was also denied training opportunities because of his race, African American.  Upon information and belief, Barron's white counterparts were given training opportunities that would allow them to change lines of progression and/or attain

11

advanced positions in their current lines of progression. Barron was not afforded similar opportunities. Upon information and belief, white employees are and have always been able to move freely through different lines of progression, learn different disciplines and generally advance in their careers with the defendant.

36.    Barron was disparately and discriminatorily compensated because of his race, African American. In addition to the fact that the defendant has discriminatorily maintained the plaintiff in a job classification that pays less than other classifications, the defendant has discriminatorily precluded Barron from advancing through pay grades at a rate similar to that of her white counterparts. The defendant also discriminatorily denied merit and performance based increases to Barron because of his race, African American.

### D.    **Nancy Gaines**

37.    Nancy Gaines (hereinafter "Gaines" or "plaintiffs") began working with the Federal Reserve Bank on May 1, 1974 as a Settlement Clerk. She remained in the clerk line of progression and is currently a Lead Clerk.

38.    Despite her desire to move to different lines of progression and attain supervisory and/or managerial positions within her line of progression or others within the defendant, the plaintiff was precluded because of her race, African American.

39.    Throughout her career and just prior to her filing a charge of discrimination with the EEOC, Gaines was interested in advanced positions. However, she was consistently passed over for promotions and less qualified white employees were awarded the positions. Upon information and belief, the defendant company often

12

failed to post or otherwise advertise positions.

40.     An example of the defendant's discriminatory conduct with respect to Gaines and promotions would be the Lead Clerk position at grade 27.  Gaines desired the position and it was awarded to Beth St. John, Sydney Blcakwell and Victoria Hitchcock, less qualified white employees.  The defendant did not consider Gaines for the promotions, despite her qualifications and her ability to perform the duties of the position.  The defendant also overlooked Gaines for the Quality Analyst position.  The defendant awarded the position to Ashley Patrick, a less qualified white employee. Jeremy Whitley, Blake Andrus and Michael Jadwin were hired into supervisory or managerial positions in the payment services line of progression.  Gaines was denied the opportunity to compete for or attain these positions.   These, of course, were not the sole promotional opportunities that Gaines was denied as there were many additional jobs - some of which were never posted or advertised - for which Gaines was passed over in favor of less qualified white employees.

41.     Employees were given formal annual performance reviews.  Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive monetary increases, the defendant engaged in a discriminatory pattern and practice of rating Gaines and other African American employees below the actual rating achieved.

42.     Gaines was a victim of the defendant's discriminatory rating practices and received several diminished, underrated or underscored evaluations.  Though Gaines did not receive evaluations that feel below the standards that were set for her position,

13

she typically did not receive an accurate rating.  There have been many instances throughout her employment and just prior to filing a charge of discrimination where Ambrose did not receive an "outstanding performance" rating or an "exceeded performance requirements" rating despite performing at such levels the preceding year.

43.    Gaines was also denied training opportunities because of her race, African American.  Upon information and belief, Gaines' white counterparts were given training opportunities that would allow them to change lines of progression and/or attain advanced positions in their current lines of progression.  Gaines was not afforded similar opportunities.  Indeed, Gaines remained in the same line of progression for nearly thirty years.  Upon information and belief, white employees are and have always been able to move freely through different lines of progression, learn different disciplines and generally advance in their careers with the defendant.

44.    Gaines was disparately and discriminatorily compensated because of her race, African American.  In addition to the fact that the defendant has discriminatorily maintained Gaines in a job classification that pays less than other classifications, the defendant has discriminatorily precluded Gaines from advancing through pay grades at a rate similar to that of her white counterparts.  The defendant also discriminatorily denied merit and performance based increases to Gaines because of her race.

**E.    Dwight Myricks**

45. ·   Dwight Myricks (hereinafter "Myricks" or "plaintiffs") began working with the Federal Reserve Bank on June 13, 1977 as a Dispatch Clerk Trainee.  He is currently a Lead Clerk.

46.    Despite his desire to move to different lines of progression and attain supervisory and/or managerial positions within his line of progression or others within the defendant company, the plaintiff was precluded because of his race, African American.

47.    Throughout his career and just prior to his filing a charge of discrimination with the EEOC, Myricks was interested in advanced positions. However, he was consistently passed over for promotions and less qualified white employees were awarded the positions. Upon information and belief, the defendant company often failed to post or otherwise advertise positions.

48.    An example of the defendant's discriminatory conduct with respect to Myricks and promotions would be the Lead Clerk position at grade 27. Myricks desired the position and it was awarded to Beth St. John, Sydney Blcakwell and Victoria Hitchcock, less qualified white employees. The defendant did not consider Myricks for the promotions, despite his qualifications and his ability to perform the duties of the position. The defendant also overlooked Myricks for the Quality Analyst position. The defendant awarded the position to Ashley Patrick, a less qualified white employee. These, of course, were not the sole promotional opportunities that Myricks was denied as there were many additional jobs - some of which were never posted or advertised - for which Myricks was passed over in favor of less qualified white employees.

49.    Employees were given formal annual performance reviews. Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive

15

monetary increases, the defendant engaged in a discriminatory pattern and practice of rating Myricks and other African American employees below the actual rating achieved.

50.     Myricks was a victim of the defendant's discriminatory rating practices and received several diminished, underrated or underscored evaluations.  Though Myricks did not receive evaluations that fell below the standards that were set for his position, he typically did not receive an accurate rating.  There have been many instances throughout his employment and just prior to filing a charge of discrimination where Myricks did not receive an "outstanding performance" rating or an "exceeded performance requirements" rating despite performing at such levels the preceding year.

51.     Myricks was also denied training opportunities because of his race, African American.  Upon information and belief, Myricks' white counterparts were given training opportunities that would allow them to change lines of progression and/or attain advanced positions in their current lines of progression.  Myricks was not afforded similar opportunities.  Upon information and belief, white employees are and have always been able to move freely through different lines of progression, learn different disciplines and generally advance in their careers with the defendant.

52.     Myricks was disparately and discriminatorily compensated because of his race, African American.  In addition to the fact that the defendant has discriminatorily maintained Myricks in a job classification that pays less than other classifications, the defendant has discriminatorily precluded Myricks from advancing through pay grades at a rate similar to that of his white counterparts.  The defendant also discriminatorily denied merit and performance based increases to Myricks because of his race.

16

**F.   Brenda White**

53.     Brenda White (hereinafter "White" or "plaintiff(s)") began working with the Federal Reserve Bank in 1972 as a Balancer in the Payment Services Department. She remained in clerk line of progression and is currently a Lead Clerk.

54.     Despite her desire to move to different lines of progression and attain supervisory and/or managerial positions within her line of progression or others within the defendant, the plaintiff was precluded because of her race, African American.

55.     Throughout her career and just prior to her filing a charge of discrimination with the EEOC, White was interested in advanced positions.  However, she was consistently passed over for promotions and less qualified white employees were awarded the positions.  Upon information and belief, the defendant company often failed to post or otherwise advertise positions.

56.     An example of the defendant's discriminatory conduct with respect to White and promotions would be the Quality Analyst position.  The defendant overlooked White for the position and instead awarded the position to Ashley Patrick, a less qualified white employee.   Jeremy Whitley, Blake Andrus and Michael Jadwin were hired into supervisory or managerial positions in the payment services line of progression.  White  was denied the opportunity to compete for or attain these positions. These, of course, were not the sole promotional opportunities that White was denied as there were many additional jobs - some of which were never posted or advertised - for which White was passed over in favor of less qualified white employees.

57.     Employees were given formal annual performance reviews.  Because

17

performance evaluations were inextricably tied to an employees ability to receive

promotions to advanced classifications or different lines of progressions and/or receive

monetary increases, the defendant engaged in a pattern and practice of rating White

and other African American employees below the actual rating achieved.

58.    White was a victim of the defendant's discriminatory rating practices and

received several diminished, underrated or underscored evaluations.  Though White did

not receive evaluations that feel below the standards that were set for her position, she

typically did not receive an accurate rating.  There have been many instances

throughout her employment and just prior to filing a charge of discrimination where

White did not receive an "outstanding performance" rating or an "exceeded

performance requirements" rating despite performing at such levels the preceding year.

59.    White was also denied training opportunities because of her race, African

American.  Upon information and belief, White's white counterparts were given training

opportunities that would allow them to change lines of progression and/or attain

advanced positions in their current lines of progression.  White was not afforded similar

opportunities.  Indeed, Gaines remained in the same line of progression for nearly thirty

years.  Upon information and belief, white employees are and have always been able to

move freely through different lines of progression, learn different disciplines and

generally advance in their careers with the defendant.

60.    White was disparately and discriminatorily compensated because of her

race, African American.  In addition to the fact that the defendant has discriminatorily

maintained White in a job classification that pays less than other classifications, the

defendant has discriminatorily precluded White from advancing through pay grades at a rate similar to that of her white counterparts. The defendant also discriminatorily denied merit and performance based increases to White because of her race.

### G. Clauzelle Williams

61.     Clauzelle Williams (hereinafter "Williams" or "plaintiff(s)") began working with the Federal Reserve Bank in 1979 as a Clerk. She is currently a Financial Analyst in the Business Development Department

62.     Despite her desire to move to different lines of progression and attain supervisory and/or managerial positions within her line of progression or others within the defendant, the plaintiff was precluded from taking advantage of many opportunities because of her race, African American.

63.     Throughout her career and just prior to her filing a charge of discrimination with the EEOC, Williams was interested in advanced positions. However, she was consistently passed over for promotions and less qualified white employees were awarded the positions. Upon information and belief, the defendant company often failed to post or otherwise advertise positions. ·

64.     Employees were given formal annual performance reviews. Because performance evaluations were inextricably tied to an employees ability to receive promotions to advanced classifications or different lines of progressions and/or receive monetary increases, the defendant engaged in a pattern and practice of rating Williams and other African American employees below the actual rating achieved.

65.     Williams was a victim of the defendant's discriminatory rating practices

19

and received several diminished, underrated or underscored evaluations.  Though she

did not receive evaluations that feel below the standards that were set for her position,

she typically did not receive an accurate rating.  There have been many instances

throughout her employment and just prior to filing a charge of discrimination where

Ambrose did not receive an "outstanding performance" rating or an "exceeded

performance requirements" rating despite performing at such levels the preceding year.

The defendant also issued unfairly lowered performance evaluations to Williams in

retaliation for her complaints of race discrimination and her support of other African

American employees in their complaints of race discrimination.

66.     Williams was also denied training opportunities because of her race,

African American.  Upon information and belief, Williams' white counterparts were given

training opportunities that would allow them to change lines of progression and/or attain

advanced positions in their current lines of progression.  Williams was not afforded

similar opportunities.  Upon information and belief, white employees are able to move

freely through different lines of progression, learn different disciplines and generally

advance in their careers with the defendant.

67.     Williams was disparately and discriminatorily compensated because of her

race, African American. Williams was paid less wages than similarly situated white

employees and was also paid less than a less senior white male, Russell Lloyd, for

performing substantially the same job as Williams'.  The defendant has discriminatorily

precluded Williams from advancing through pay grades at a rate similar to that of her

white counterparts.  The defendant also discriminatorily denied merit and performance

based increases to Williams because of her race, African American.

## IV.   STATEMENT OF CLAIMS

### COUNT I

### PATTERN AND PRACTICE OF DISCRIMINATION AND DISPARATE IMPACT IN VIOLATION OF 42 U.S.C. § 2000e et. seq. TITLE VII

68.     Plaintiffs re-allege and incorporate by reference paragraphs 1-67, with the same force and affect as if fully set forth herein and further state as follows:

69.     Plaintiffs have been discriminated against and treated differently than similarly situated white employees solely because of their race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991.  This treatment by the defendant has affected the terms and conditions and enjoyment of plaintiffs' employment, has resulted in their failure to receive promotions, has resulted in their failure to receive training, has resulted in discriminatory and retaliatory performance evaluations, has resulted in disparate and unfair payment and/or compensation and has resulted in lost opportunities for early retirement.

70.     The defendant has implemented policies that have a disparate impact on African Americans and the defendant has not and cannot justify said practices as business related or necessary.

71.     Specifically, plaintiffs, Drake and Williams,  were retaliated against for complaining about the discriminatory treatment of African Americans as outlined above and/or filing a charge of discrimination with the EEOC.

72.     Defendant, Federal Reserve Bank, has a pattern and practice of racial

discrimination in all of the foregoing respects.

73.    Plaintiffs believe and thus aver that the affect of the defendant's unlawful employment practices has been to limit, classify and discriminate against persons of African American ancestry in ways which jeopardize and intend to deprive them of employment opportunities and otherwise adversely affect their status as employees because of their race in violation of Title VII. Plaintiffs, victims of such practices, are now and will continue to be unlawfully deprived of income in the form of wages, perspective retirement benefit, seniority, social security benefits, insurance coverage and other monetary and non-monetary benefits due to them solely because of their race in sums to be proved at trial.

74.    Plaintiffs have suffered embarrassment, humiliation, mental distress and emotional pain and anguish as a consequence of the defendant's racially discriminatory and demeaning unlawful conduct.

75.    This reckless and willful discrimination on the part of the defendant constitutes a violation of the plaintiffs' statutory rights pursuant to Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991. Plaintiffs have no plain adequate or complete remedy at law to correct the defendant's unlawful employment practices and the injunctive and other equitable relief they seek are their only means securing full relief from these practices. The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth above unless enjoined by this Court.

**COUNT II**

22

**PATTERN AND PRACTICE OF DISCRIMINATION AND DISPARATE IMPACT IN VIOLATION OF  42 U.S.C. § 1981 and 1981(a)**

76.     Plaintiffs re-allege and incorporates by reference paragraphs 1-67 above with the same force and affect as if fully set forth herein and further state as follows:

77.     The affect of defendant's discrimination as outlined above, has deprived plaintiffs of their right to make and enforce contracts to the full and equal benefit of regulations and all laws and proceedings for the security of plaintiffs' employment because of plaintiffs' race, African American,  in violation of 42 U.S.C. §1981 and 1981(a).

78.     The defendant's conduct has violated plaintiffs' right to make and enforce contracts as is enjoyed by similarly situated white persons in violation of 42 U.S.C. § 1981 and 1981(a).

79.     Plaintiffs have been damaged by virtue of defendant's conduct alleged in the foregoing paragraphs and are entitled to recover these damages from the defendant.

80.     As a further consequence and affect of the defendant's unlawful conduct and practices, the plaintiffs were deprived of income and other compensation and benefits.

81.     Plaintiffs have suffered embarrassment, humiliation, mental distress, and emotional pain and anguish as a consequence of the defendant's racially discriminatory, demeaning and unlawful conduct.

82.     The plaintiffs have no plain adequate or complete remedy at law to

23

address the wrongs alleged herein this suit, and an action for injunctive, declaratory, and other relief including punitive and compensatory damages is their only means of securing adequate relief.  The plaintiffs are now suffering and will continue to suffer irreparable injury from the defendant's unlawful practices and policies as set forth above unless enjoined by this Court.

## COUNT III

## DISPARATE TREATMENT IN WAGES IN VIOLATION OF 29 U.S.C. §206(d)

83.     Plaintiffs re-allege and incorporate by reference paragraphs 1-67 above with the same force and affect as if fully set forth herein and further state as follows:

84.     The defendant, during the relevant period, did intentionally and willfully discriminate against the plaintiff, Clauzelle Williams, by paying her a lower wage for performing work substantially similar to work performed by men who were paid more on the basis of her sex in violation of 29 U.S.C. §206(d), otherwise known as the Equal Pay Act.

85.     Plaintiff has suffered embarrassment, humiliation, mental distress and emotional pain and anguish as a consequence of the defendant's sex discrimination and demeaning unlawful conduct.

86.     This reckless and willful discrimination on the part of the defendant constitutes a violation of the plaintiff's statutory rights pursuant to The Equal Pay Act, 29 U.S.C. §206(d). Plaintiff has no plain adequate or complete remedy at law to correct the defendant's unlawful employment practices and the injunctive and other equitable relief she seeks are her only means securing full relief from these practices.  The

24

plaintiff is now suffering and will continue to suffer irreparable injury from the defendant's unlawful policies and practices as set forth above unless enjoined by this Court.

87.    Plaintiffs reserve the right to amend this complaint to add class allegations.

## V.    PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully pray that this Court:

1.    Issue a declaratory judgment that the defendant's acts, policies, practices and procedures complained of herein have violated and continue to violate the rights of the plaintiff as secured by the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1866 as amended and 29 U.S.C. §206(d), otherwise known as the Equal Pay Act..

2.    Grant the plaintiffs a permanent injunction enjoining the defendant, its agents, successors, employers, attorneys and those acting in concert with the defendant at the defendant's request from continuing to violate the plaintiffs' rights.

3.    Enter an order requiring the defendant to make the plaintiffs whole by granting appropriate declaratory and injunctive relief, and back pay, front pay plus (interest), the reasonable value of all benefits lost, as well as nominal and or compensatory and punitive damages.

4.    The plaintiffs further pray for such other relief in benefits as the cause of justice may require, including an award of fees.

Respectfully submitted,

25

Samuel Fisher
Eden Brown Gaines
Attorney for Plaintiff

**OF COUNSEL:**

**GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.**
420 North 20th Street
1400 SouthTrust Tower
Birmingham, AL  35203-3204
(205) 328-0640

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON
## ALL ISSUES TRIABLE BY JURY

**PLAINTIFF'S ADDRESS:**

Annie Drake
Dwight Myricks
Clauzelle Williams
Brenda White
Alvis Ambrose
Hollis Barron
Nancy Gaines
c/o Samuel Fisher, Esq.
GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.
420 North 20th Street
1400 SouthTrust Tower
Birmingham, AL 35203

**DEFENDANT'S ADDRESS**

Federal Reserve Bank
1801 Fifth Street North
Birmingham, AL 35203