IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DWIGHT MYRICKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. CV 03-B-0163-S |
| ) | |
| FEDERAL RESERVE BANK OF ) | |
| ATLANTA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 7.)[1] Plaintiff Dwight Myricks has sued his employer, defendant Federal Reserve Bank of Atlanta, alleging that defendant discriminated against him on the basis of his race in violation of federal law. (Doc. 2, pp. 14-16.) Upon consideration of the record, the submission of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 7), is due to be granted.

### I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255. Nevertheless, the non-moving party need not be given the benefit of every inference but only of every plausible inference. *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. STATEMENT OF FACTS

Defendant hired plaintiff as a Dispatch Clerk Trainee on June 13, 1977. (Doc. 12, Ex. 37 ¶ 2.) On August 1, 1978, he was moved to the position of Dispatch Clerk, Grade 23. (*Id.*) A month later he was reassigned to the position of Check Processor II, Grade 23. (*Id.*) In December 1986, he was promoted to Senior Check Processor. (*Id.* ¶ 3.) On March 1, 1998, defendant promoted plaintiff to Pay or Bank Services Lead, Grade 26. (Doc. 8, Ex. F, ex.

1 at 1388.) On the same day, defendant promoted Victoria Hitchcock, white, to the position of Check Lead, Grade 26. (Doc. 8, Ex. F, ex. 11 at 31264.)

In July 1997, defendant hired Ashley Patrick, white female, as Financial Quality Control Analyst, Grade 26. (Doc. 8, Ex. C ¶ 6.) She had previously worked at defendant's Jacksonville Branch as a Check Processor II. (Doc. 12, Ex. 14 at 14009.) After leaving defendant in November 1993, she completed her college degree in Business Administration. (*See* doc. 8, Ex. F, ex. 9 at 13977.) In February 1998, Patrick was promoted to a higher grade position of Financial Services Operations Analyst, Grade 27. (Doc. 8, Ex. C ¶ 6.) This position was not posted, and plaintiff did not have an opportunity to apply. Andre Anderson, who, at all times relevant to this case, was Branch Manager of the Birmingham Branch, (*id.* ¶ 1), testified that Patrick's February 1998 promotion was a "career progression promotion" to the "next level of responsibility in her job family." (*Id.* ¶¶ 4, 6.)[2] He stated:

> This promotion did not involve the filling of any vacancy, but recognized that Ms. Patrick was capable of, and in fact was, performing at a higher level than the Grade 26 designation indicated, in terms of expertise, knowledge, and analytical ability. The Grade 27 position called on Ms. Patrick not only to retain most of the duties she had previously performed in the Grade 26 position, but also to perform an expanded role. Only Ms. Patrick was considered for the position because it was a career progression promotion and there was no vacancy to fill.

(*Id.* ¶ 6.) Job progression promotions are not posted because they do not represent the filling of a job vacancy. (Doc. 8, Ex. B at 72-73.)

---

[2]It appears from the record that "career progression promotion" and "job progression promotion" are used interchangeably. *See, e.g., Id.* ¶ 6, Doc. 8, Ex. B at 72-73.

Plaintiff contends that Patrick's promotion to a Financial Services Operations Analyst position was not a "career progression promotion" because there is no Grade 27 position in her job family. (Doc. 12, Ex. 3 ¶ 2 and ex. A, p. 4.) Also, plaintiff contends that Patrick's promotion was not a job progression promotion because a year before a black employee, LaToya Smith, had been told by Doug Orazine and Ralph LaRue, high-level managers over the Quality Control Unit, that there was "no room for career path movement, outside of management in the quality unit." (Doc. 12, Ex. 2 ¶ 2.) Smith was later promoted to the position of Financial Services Operations Analyst, Grade 27. (*Id.* ¶ 5.) This position was posted and she was required to apply. (*Id.*)

Plaintiff complains that he was not promoted to the position of Check Collection Supervisor, Grade 28, Payment Service Department. (Pl. Mem. in Opp. to Mot. for Summ. J. at 12-13.) He claims he was not promoted on three occasions – June 1998, March 1999, and May 1999 – and that defendant awarded these positions to white employees – Michael Jadwin, Jeremy Whitley, and Blake Andrus – with less experience. (*Id.*)

On or about June 26, 1998, plaintiff filed a Charge of Discrimination with the EEOC. (Doc. 12, Ex. 26.) In his EEOC charge, plaintiff alleged that defendant had discriminated against him with regard to "disciplinary actions, performance ratings, job assignments, training, promotions, compensation and other terms, conditions and privileges of employment." (*Id.*) He also alleged that defendant had a discriminatory pattern and practice with regard to its promotions practices, and that its practices had a disparate impact on

4

"disciplinary actions, performance ratings, job assignments, training, promotions, compensation, and other terms, conditions, and privileges of employment. . ." (*Id.*)

Plaintiff filed an Amended Charge of Discrimination in August 1998. (Doc. 12, Ex. 28.) His amended EEOC charge set forth specific alleged discriminatory promotion decisions. (*Id.*) The amended charge states:

> In December 1997, I was passed over for a promotion to a Lead Clerk position in Payment Services by Beth St. John, a less qualified white employee.
>
> In December 1997, I was passed over for a promotion to a Lead Clerk position in Payment Services by [Cindy] Blackwell, a less qualified white employee.
>
> In December 1997, I was passed over for a promotion to a Lead Clerk, Grade 26, in Payment Services by Ashley Patrick, a less qualified white employee.
>
> In January 1998, I was passed over for a promotion to a Quality Analyst, Grade 27, in Payment Services by Ashley Patrick, a less qualified white employee.
>
> In February 1998, I was passed over for a promotion to a Lead Clerk, Grade 26, in Payment Services by Victoria Hitchcock, a less qualified white employee.

(*Id.*) On September 6, 2000, the EEOC issued a Determination on plaintiff's charge, which found "reasonable cause to believe that the [defendant] discriminated against [plaintiff] with regard to job assignments, training, performance ratings, promotions and compensation because of race," while determining there was no reasonable cause to believe defendant discriminated against plaintiff with respect to disciplinary matters. (Doc. 12, Ex. 18.)

On January 17, 2002, plaintiff, and six other employees of defendant, filed a Complaint alleging defendant had discriminated against them on the basis of their race.

5

(Doc. 2.) The court ordered that the claims be severed. (Doc. 1) Plaintiff Myricks alleges that he was discriminated against with respect to promotions to the Lead Clerk position, Grade 27. (Doc. 2 ¶ 48.) Plaintiff also alleges that performance reviews "were inextricably tied to an employee[']s ability to receive promotions to advanced classification or different lines of progressions and/or receive monetary increases." (*Id.* ¶ 49.) He contends that he and other black employees were discriminated against because they were given inaccurate ratings; particularly, plaintiff contends that he was not rated "outstanding" or "exceeds performance requirements" on his evaluations "despite performing at such levels the preceding year." (*Id.* ¶ 50.)[3] Plaintiff also contends that he was denied training opportunities available to white employees and that he was paid less than white employees. (*Id.* ¶¶ 51, 52.) Plaintiff also alleges, generally, that "defendant has implemented policies that have a disparate impact on African Americans and the defendant has not and cannot justify said practices as business related or necessary." (*Id.* ¶ 70.)

### III. DISCUSSION

#### A. PROMOTION DECISIONS

Plaintiff alleges that he was denied promotions to the following positions: (1) Check Lead, Grade 26; (2) Payment Services Quality Control Specialist, Grade 26; and (3) Financial

---

[3]Plaintiff's supervisor, Clauzell Williams, does not contend that plaintiff performed in a manner worthy of an "outstanding" or "exceeds performance requirements" rating, as plaintiff asserts. (*See generally* Doc. 12, Ex. 3.)

Services Operations Analyst, Grade 27.[4] To support his claims of discrimination with regard to the Promotion Decisions, plaintiff relies on circumstantial evidence and statistical evidence.

### 1. Circumstantial Evidence

When a plaintiff seeks to establish a claim of employment discrimination by circumstantial evidence, the court analyzes such claim under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and later refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Burdine*, 450 U.S. at 252-53. If plaintiff successfully establishes a prima facie case, the burden of production shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802. If defendant succeeds in carrying this burden, then plaintiff must prove that the defendant's articulated

---

[4]In his Declaration, plaintiff contends that he was denied a promotion to Check Collection Supervisor, Grade 28, on three separate occasions, and on each occasion a white was awarded the position. Plaintiff did not complain of defendant's failure to promote him to the position of Check Collection Supervisor position in his EEOC charge, his amended EEOC charge, his Complaint, his deposition, or at any other time prior to the close of discovery. According to the record before the court, the first time that plaintiff mentions such positions is in his Declaration submitted in opposition to defendant's Motion for Summary Judgment. To allow plaintiff to challenge an additional promotion decision for the first time in opposition to defendant's Motion for Summary Judgment and after the close of discovery "would not only be grossly inefficient, but would be patently unfair to [defendant]." *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997). Therefore, the court will not consider plaintiff's challenge to defendant's promotion decisions regarding the position of Check Collection Supervisor.

reasons are a mere pretext for unlawful motives, in this case, race discrimination or retaliation. *Burdine*, 450 U.S. at 253. At all times, plaintiff bears the burden of persuasion on the ultimate question of whether the defendant acted with an unlawful motive. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993). If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997).

To establish a prima facie case of race discrimination with regard to promotion decisions, plaintiff must prove: (1) he is a member of a protected class; (2) he was qualified and applied for an available position, (3) he was rejected despite his qualifications; and (4) the available position was filled by an employee who is not a member of the protected class. *Walker v. Mortham*, 158 F.3d 1177, 1186, 1191-93 (11th Cir. 1998)(citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186-88 (1989); *Crawford v. Western Electric Co.*, 614 F.2d 1300, 1315 (5th Cir. 1980)).

### a. Check Lead, Grade 26

Plaintiff alleges that he was denied a promotion to the position of Check Lead, Grade 26, in "March 1998," and that a less-qualified white employee, Victoria Hitchcock, was selected for the position. (Pl. Br. in Resp. to Mot. for Summ. J. at 12.) The record shows that defendant promoted plaintiff to the Payer Bank Services position, Grade 26, on March

1, 1998, (doc. 8, Ex. F, ex. 1 at 1388), and that defendant promoted Hitchcock to the same position on the same day, (*Id.*, ex. 11 at 31264).

Based on this evidence, the court finds that plaintiff cannot prove that he was treated *less* favorably than Hitchcock with regard to a promotion decision, because the evidence demonstrates that plaintiff and Hitchcock were treated the *same*. Therefore, defendant's Motion for Summary Judgment is due to be granted as to plaintiff's claim based on the Check Lead position awarded to Hitchcock in March 1998.

### b. Payment Services Quality Control Specialist, Grade 26

In his Memorandum in Opposition to defendant's Motion for Summary Judgment, plaintiff contends –

> In July 1997, the Bank hired Ashley Patrick, white female, into the position of Payment Services Quality Control Specialist, Grade 26, in the newly-created Quality Control Unit of Payment Services. The position was not posted and Myricks had no opportunity to apply. Had Myricks been given the opportunity to apply for the position, his qualifications would have easily surpassed Patrick's [qualifications].

(Pl. Mem. in Opp. to Mot. for Summ. J. at 8.)

Plaintiff filed an EEOC charge on June 26, 1998; July 1997 is more than 180 days before he filed his charge of discrimination with the EEOC. Therefore, any claim based on defendant's alleged failure to select plaintiff for the Quality Control Specialist position in July 1997 is time-barred. *Beavers v. American Cast Iron Pipe*, 975 F.2d 792, 796 (11th Cir. 1992)("In order to be timely, the charge must have been filed within 180 days of the 'alleged unlawful practice.'")(quoting 42 U.S.C. § 2000e-5(e)(1)).

9

To the extent that plaintiff alleges a § 1981 violation based on this promotion decision, such claim is also time-barred. Plaintiff filed his original Complaint on January 17, 2002. "[Section] 1981 claims are subject to the state personal injury statute of limitations, which in Alabama is two years." *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253, 1262 (N.D. Ala. 2002)(citing *Peterson v. BMI Refractories*, 132 F.3d 1405, 1414 n.16 (11th Cir. 1998)). Plaintiff's Complaint was filed in January 2002; therefore, plaintiff's § 1981 claim based on the 1997 promotion decision is due to be dismissed.

### c. Financial Services Operations Analyst, Grade 27

Plaintiff contends that, in February 1998, he was denied a promotion to Financial Services Operations Analyst, Grade 27, because of his race. Defendant promoted Ashley Patrick to this position.

Defendant argues that plaintiff's Title VII claim based on the February 1998 promotion decision is due to be dismissed because the decision "did not involve filling a vacancy;" rather, the decision was a "career progression promotion." (Def. Br. in Sup. of Summ. J. at 7.) Defendant describes this career progression promotion as the Personnel Committee's recognition "that Patrick was capable of, and actually was, performing at a higher level than the Grade 26 designation indicated, in terms of expertise, knowledge and analytical ability." (*Id.*) Plaintiff contends that the Financial Services Operations Analyst was not in the same "family" of jobs and another Quality Control Analyst had been told in 1997 that there was no Grade 27 Analyst position in the Quality Control Unit. (Pl. Br. in Opp. to Summ. J. at 10-11.) However, the court does not find the issue of whether the job

10

"title" of Financial Services Operations Analyst was in the job "family" of the Quality Control Unit or whether another employee was told in August 1997 that a Grade 27 position did not exist in the Quality Control Unit are relevant to the dispositive issue of whether defendant promoted Patrick to fill an *available* position. *See Walker*, 158 F.3d at 1192; *Eastland v. Tennessee Valley Authority*, 704 F.2d 613, 617 n.6 (11th Cir. 1983)("An employee may progress to a higher level job by promotion or reclassification. A promotion occurs when an established vacancy is filled with an internal candidate. A reclassification occurs when an employee classified at one level is moved to a higher level because he is already performing the duties and responsibilities of the higher level.").

Nothing in the record indicates Patrick was selected to fill a vacant and available position. Because plaintiff cannot show that he was "qualified for an *available* position," *Walker*, 158 F.3d at 1192, he cannot establish a prima facie case of racial discrimination with regard to the decision to reclassify Patrick to a Grade 27 position in February 1998. Therefore, defendant's Motion for Summary Judgment is due to be granted as to plaintiff's claim based on the Financial Services Operations Analyst position.

### 2. Statistical Evidence

Plaintiff contends he can establish that defendant has a pattern or practice of discriminating against blacks in promotion decisions and/or that defendant's promotion procedures have a disparate impact on black employees by showing that promotions are based on job evaluations, the job evaluations are largely subjective, and a significantly lower percentage of black employees, as compared to white employees, are rated as "Outstanding."

11

However, for the reasons set forth above, the court finds that plaintiff has not demonstrated that he has any claim based on an adverse promotion decision. The Eleventh Circuit has held that an individual using statistics. to establish pattern-or-practice discrimination or disparate impact discrimination must identify an actionable adverse employment event caused by the alleged pattern or practice, or the facially non-discrimination practice or procedure that produces a disparate impact. *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984), the Eleventh Circuit stated:

> If they are strong enough, statistics alone may be enough to create a prima facie case of classwide discrimination. And there is no doubt that statistics can be relevant and important in an individual case. But statistics alone cannot make a case of individual disparate treatment. One of the purposes of Title VII is to make persons whole for injuries suffered on account of unlawful discrimination . . .[B]efore the court may award damages, plaintiff must first establish that she has, in fact, sustained an economic loss from defendant's discrimination. Unless the individual plaintiff can point to some specific instance of discrimination, there is no wrong for the court to remedy.
>
> . . . This Court has also held that a Title VII plaintiff bears the initial burden of establishing the economic injury resulting from the adverse employment action. For the plaintiff to establish economic injury, ***he must necessarily show that in fact he was the victim of an identifiable act of discrimination***.
>
> In short, . . . ***[plaintiff] must point to a job that he was denied because of his race***.

*Carmichael,* 738 F.2d at 1131-32 (internal citations and quotations omitted)(emphasis added).

For the reasons set forth above, the court finds that plaintiff has not established any actionable adverse promotional decision. Therefore, plaintiff's statistical evidence alone

12

cannot establish a case of discrimination against plaintiff with regard to any promotion decision.

Defendant argues that plaintiff's pattern-or-practice claims and his disparate treatment claims are due to be dismissed because his statistical evidence is presented without any "analytical foundation, " and, therefore, his statistics are "virtually meaningless." (Def. Mem. in Reply at 9.) The court agrees. "'[S]tatistics without an analytical foundation are 'virtually meaningless.'" *Dooley v. AutoNation USA Corp.*, 218 F. Supp. 2d 1270, 1279 (N.D. Ala. 2002)(quoting *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)); *see also Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642, 650-53 (1989)).)

Plaintiff's bare numbers are insufficient to establish that the disparity between black and non-black employees receiving a performance rating of "outstanding" is based upon a pattern or practice of discrimination or upon a facially neutral policy that disparately impacts black employees without including and analyzing any of the numerous "variables which would undermine the reasonableness of the inference of discrimination . . . ." *Swint v. Pullman-Standard*, 539 F.2d 77, 97 (5th Cir. 1976)(internal citations omitted); *see also Evans v. McLain, Inc.*, 131 F.3d 957, 963 (11th Cir. 1997)("Statistics . . . without an analytic foundation are 'virtually meaningless.'" (quoting *Brown v. American Honda Co.*, 939 F.2d 946, 952-53 (11th Cir. 1991)(holding that plaintiff's statistical evidence, which lacked information about whether black employees had even applied for supervisory positions, was insufficient as a matter of law))); *Forehand v. Florida State Hosp.*, 89 F.3d 1562, 1575 (11th Cir. 1996) ("in a disparate treatment case, the statistical evidence must be finely

tuned")(internal citations and quotations omitted). Also, the court finds nothing in the record to establish the correlation between an "outstanding" evaluation rating and selection for promotion. Thus, plaintiff's mere showing of a disparity between the percentage of black and non-black employees receiving an "outstanding" evaluation rating does not establish that defendant's evaluation process has a disparate impact on promotions, or that its subjective evaluation process is a pattern or practice that discriminates against black in promotion process.

Therefore, the court finds that plaintiff has not established a disparate impact claim or a pattern-or-practice claim based on failure to promote, and plaintiff's pattern-or-practice and disparate impact promotion claims are due to be dismissed.

## B. TRAINING

Plaintiff contends that he was denied computer training given to Ashley Patrick and used by defendant to justify her promotion. In support of this assertion he cites the court to his Declaration. (Pl. Mem. in Opp. to Mot. for Summ. J. at 18 (citing doc. 12, Ex. 37.) The court can find no reference to computer training offered to Patrick in plaintiff's Declaration. Indeed, the court can find no evidence at all that Patrick received computer training prior to February 1998, much less that plaintiff was denied computer training that Patrick received prior to her promotion.[5]

---

[5]The record does contain a document indicating that Patrick and plaintiff were in two computer classes together in April 1998 – Word Beginning and Excel Beginning, and that plaintiff attended an additional computer class at that time that Patrick did not attend, Windows 95 Beginning. (Doc. 8, Ex. G.) Plaintiff states in his Declaration that he received

14

Therefore, plaintiff has not established that he was treated less favorably than similarly situated white employees, and his disparate treatment claim based on a denial of training opportunities is due to be dismissed.

## C. REMAINING CLAIMS – PAY CLAIM

Plaintiff contends that defendant "has wholly failed to address all of the plaintiff's claims." (Pl. Mem. in Opp. to Mot. for Summ. J. at 19.) However, he does not enumerate for the court's benefit those claims that defendant failed to address. As set forth above, plaintiff alleges he was discriminated against with respect to promotions, (doc. 2 ¶ 48); he was given inaccurate evaluation ratings that he claims caused him not to be promoted, (*id.* ¶¶ 49-50); he was denied training opportunities available to white employees, (*id.* ¶ 51); and he was paid less than white employees (*id.* ¶ 52). Defendant has moved for summary judgment as to all claims. (Doc. 7.) The only possible claim remaining is plaintiff's pay claim, which must be dismissed.

In his deposition, plaintiff testified his pay was affected by "a higher level of scrutiny and . . . stricter performance standards than white employees." (Doc. 12, Ex. 9 at 62.) He thought that white employees Marguerite McNamee and Billy Joe Spears were paid more than he was at the time he filed his EEOC charge. (*Id.* at 87-89.) McNamee had more seniority than plaintiff having been an employee since July 1968, and she was promoted to

---

the bulk of his training from the Bank after his initial charge of discrimination. (Doc. 12, Ex. 37, ¶ 23.) Although it is unclear how much of that training was on computer, the court recognizes "Lotus Notes" as a computer email, calendering and organizational program, as it is widely used throughout the federal judiciary.

15

Lead Clerk in the Securities Services Department in 1986, (doc. 8, Ex. F ¶13); Spears was promoted to Lead Check Balancer in the Check Collections Department in 1981, (*id.* ¶ 14). Plaintiff was promoted to a Payor Lead Bank Services position in 1998. (*Id.* ¶ 2.) Because defendant establishes its employees' pay rates based on the salary ranges for their grade level, (doc. 12, Ex. 12 at 188), and because McNamee and Spears were a higher grade level than plaintiff, (*see* doc. 8, Ex. C ¶¶ 11-12),[6] the court finds that McNamee and Spears are not proper comparators for plaintiff's pay claim. *See Lathem v. Department of Children and Youth Services*, 172 F.3d 786, 793 (11th Cir. 1999)("The relevant inquiry is not whether the employees hold the same job titles, but whether the employer subjected them to different employment policies.").

Therefore, plaintiff's wage discrimination claim is due to be dismissed.

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and that defendant is entitled to judgment as a matter of law. An order granting defendant's motion for summary judgment, (doc. 7), will be entered contemporaneously with this Memorandum Opinion.

---

[6] Anderson contends that McNamee and Spears were paid more than plaintiff because they had worked in their Grade 26 positions longer. (Doc. 8, Ex. C ¶¶ 11-12.)

**DONE** this  29th  day of March, 2004.

                                                                                  *Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge