## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| DWIGHT D. MYRICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. CV 03-B-0163-S |
| | ) | |
| FEDERAL RESERVE BANK OF ATLANTA, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is presently before the court on defendant's Motion to Dismiss. (Doc. 39.) Defendant contends that plaintiff's remaining discrimination claim is due to be dismissed because plaintiff signed a General Release, which had the effect of waiving his pending claim. Defendant has attached evidence to its Motion to Dismiss; therefore, the court will consider the Motion to Dismiss to be a Motion for Summary Judgment. Plaintiff opposes defendant's motion and submitted evidence in opposition. He argues that the General Release was not based on valuable consideration, the parties did not mutually assent to release of plaintiff's pending claim, and the terms of the release do not require release of his claim. Plaintiff also claims that he did not have the capacity to waive a claim for attorneys' fees and that defendant is procedurally barred from seeking dismissal based on the release at this time.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every ***reasonable*** inference.  *See Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## II. <u>STATEMENT OF FACTS</u>

On March 29, 2004, this court granted defendant's Motion for Summary Judgment and dismissed plaintiff's pending discrimination claims.  (*See* doc. 30.)[1]  Plaintiff appealed. (Doc. 36.)  During the pendency of the appeal, defendant decided to close its check processing operations at the Birmingham Branch where plaintiff was employed.  (*See* Doc. 39, Ex. B, ex. 1.)

On January 28, 2005, defendant notified all the affected employees, including plaintiff, of its decision to close the Birmingham Branch.  (*Id.*, Ex. B ¶ 3.)  Plaintiff acknowledged that he received notice of the decision and a draft of the Severance Agreement and General Release on that date.  (*Id.*, Ex. B, ex. 2.)  In the notice, defendant informed plaintiff that he had the choice of two severance packages.  (*Id.*)  One package provided:

> a lump sum equal to one half month's salary per year of service (rounded up for any fractional part of a year) not to exceed a year of salary in exchange for signing a legal release of claims document provided by [defendant]. . . .
>
> In addition, in exchange for signing the agreement, [plaintiff would] be eligible to continue [his] medical and dental benefits for one month per year of service up to six calendar months after [his] termination at the normal employee premium rates.

(*Id.*)  In addition to these benefits, the Committee on Retirement Plan Administration ["CPA"] would consider a request from defendant "to grant up to four years of additional years of service to [the] credit" of plaintiff, who was within four years of retirement.  (*Id.*)

---

[1]Reference to document number, ["Doc."], refers to the number assigned to each document filed in the court's record.

The second package provided only "a lump sum equal to two weeks' salary" if plaintiff did not sign the release.  (*Id*.)

Defendant told plaintiff that, if he signed the release, he would receive $38,420, less required deductions, and he would be able to retire because the CPA had approved its request to credit plaintiff with three additional years of service.  (*Id*., Exs. B, ex. 1, and Ex. C.)

The day before it gave notice to plaintiff, defendant's counsel informed plaintiff's counsel that plaintiff's job was being eliminated as of March 31, 2005, and that he would be offered a severance package.  (*Id*., Ex. A.)  This letter stated:

> On behalf of the Federal Reserve Bank of Atlanta, I wanted you to know that your client, Dwight Myricks, will receive a notice that his job is being eliminated by March 31, 2005.  He will be offered a severance package that ***requires the release of all claims that he has against the Bank, which would include but not be limited to the claims in the current case against the Bank***, as well as the EEOC charges he has filed.
>
> The offer being made by the Bank is [a] very generous one.  In addition to the case and other benefits being offered, as part of the consideration for the release, the Bank has asked the [CPA] to grant up to four years of additional service credit toward retirement, which, if approved, could have a substantial impact on Mr. Myricks's benefits.

(*Id*., Ex. A (emphasis added).)

On March 7, 2005, the Eleventh Circuit Court of Appeals reversed the decision of this court with regard to plaintiff's claim that defendant had discriminated against him with regard to the Financial Operations Analyst promotion decision.  (Doc. 40 at 19.)  It affirmed the court's dismissal of plaintiff's other claims.  (*Id*.)

4

On March 24, 2005, defendant's counsel again contacted plaintiff's counsel regarding the impending elimination of plaintiff's job.  (*Id.*, Ex. C.)  In this letter, defendant's counsel wrote:

> I wrote you in January to tell you that your client would soon receive a letter from the bank concerning his job elimination on March 31, 2005 and his eligibility for enhanced severance benefits, including his eligibility to receive up to four additional service credits to obtain the rule of 80 for Retirement Plan purposes.  I also explained that the enhanced severance benefits were available **provided he signs a release of all claims against the Bank**.  Mr. Myricks did indeed receive this letter on January 28, along with a copy of the severance agreement and release of claims that he must sign on his last day of employment to receive the enhanced benefits.
>
> As stated in the letter to you and Mr. Myricks, the Bank applied to the Committee on Plan Administration (CPA) for up to four additional years of service credit for Mr. Myricks as of his termination date to bring him to the Rule of 80.  The CPA recently approved this request.  I want to make sure that you and your client understand that the Bank will <u>not</u> be able to obtain additional service credit for him after his employment terminates on March 31.
>
> While the bank has the ability to make payments in order to resolve litigation, it will not have the ability to obtain this additional credit for a single employee in order to settle litigation.  The ability to be granted additional service credit is a result of an amendment to the Federal Reserve System Retirement plan, which limits eligibility <u>only</u> to those circumstances when an employee is involuntarily separated because of job elimination or downsizing within specified time limits, and who is within four years of the Rules of 80 or 90.  After March 31, Mr. Myricks will no longer meet these eligibility requirements.
>
> If Mr. Myricks wants to obtain vesting credits to reach the Rule of 80, he must sign a release on March 31.  Obtaining the Rule of 80 means that Mr. Myricks will be eligible to (1) participate in the Bank's group medical, dental, and vision plans at retiree rates as long as the plan so provides; (2) receive a $5,000 death benefit payable from the pension plan; and (3) cash out up to 65 days of his accrued extended illness bank.  The additional vesting credit would also have a positive impact on his pension payments if he commences pension

payments prior to the age of 65 because it would reduce the discount that is
applied for early retirement.

I want to make sure there is no misunderstanding about this.  If Mr.
Myricks does not sign the severance agreement and release, he will not only
lose the lump sum amount of $38,420.00 and health insurance at employee
rates for six months, but he will also forever lose the opportunity to retire with
80 points.  The enhanced severance benefits – and therefore, the rule of 80 –
cannot and will not be available after March 31.  That date is quickly
approaching.

(*Id.*)  On March 28, 2005, counsel for plaintiff sent an offer of settlement to counsel for

defendant.  (Doc. 47, Ex. 1.)

On March 30, 2005, Marie Frazier, Human Resources Manager in the Birmingham

Branch, made an appointment with plaintiff for 3:00 p.m. on March 31, 2005.  (Doc. 39, Ex.

B ¶¶ 1, 4.)  "The purpose of the meeting was to go over the terms of the severance package

that had been offered to Mr. Myricks and to have him sign the Severance Agreement and

Release if he chose to do so."  (*Id.* ¶ 4.)

At around noon on March 31, 2005, defendant's counsel sent plaintiff's counsel an

e-mail, to which he attached a proposed settlement agreement that proposed to pay plaintiff

an additional $6,600 in consideration for his release of the claims in the instant action.  (Doc.

47, Ex. 2.)  Later that day, defendant's counsel forwarded a copy of the Severance

Agreement and General Release, as well as a proposed Stipulation of Dismissal to plaintiff's

counsel.  (*Id.*, Ex. 5.)  Shortly thereafter, plaintiff's counsel responded:

Thanks for the copy of the severance agreement.  I did not have a chance to
review this last document with Mr. Myricks before he left my office.  Mr.
Myricks has decided not to accept the Bank's final settlement proposal.  I

6

understand that he intends to keep his appointment with Ms. Frazier at 3:00 and to sign the severance agreement.  We'll have to figure out where this leaves us.  The firm takes the position that Mr. Myricks cannot waive or release the firm's entitlement to any fees or expense recoupment associated with the litigation.

(*Id*.)

Myricks arrived at Ms. Frazier's office at or around 3:00 p.m. on March 31, 2005. Frazier testified that she asked plaintiff if he had any questions about the Severance Agreement and General Release, and he responded that he did not.  (Doc. 39, Ex. B ¶ 5.) Plaintiff testified that he and Frazier waited for defendant's counsel to arrive at Frazier's office.  (Doc. 47, Ex. 10 ¶ 2.)   After, counsel arrived, plaintiff signed the Severance Agreement and General Release.  (*Id*.; doc. 39 ¶ 5.)  Plaintiff testified –

When I signed the Severance Agreement and General Release with the Federal Reserve Bank on March 31, 2005, it was my only intention to accept the severance package, which was offered to all eligible employees at the Bank, with the understanding that any settlement of the claims in my pending lawsuit would be separate and apart from the terms of the severance agreement, as my attorney and the bank's attorney had been discussing.

(Doc. 47, Ex. 11 ¶ 5.)  Plaintiff does not contend that he told anyone present at the time that he did not intend to release his pending discrimination claim.

The Severance Agreement and General Release states, in pertinent part:

In exchange for the Consideration, I, on my own behalf . . . forever discharge the Bank . . . from all actions, claims, and demands of any kind for which I have  . . . claimed the Bank to be liable through the date I sign this agreement.  This release includes . . . all federal, state, and local statutory and common laws, including specifically the Civil Rights Acts of 1866, 1871, 1964 and 1991 . . . .

7

. . .

I, Dwight Myricks, acknowledge and agree as follows:

(i)  I have read this Severance Agreement and General Release and fully understand all of its provisions, and I am knowingly and voluntarily agreeing to its terms.

(ii)  I understand that by signing this agreement I am waiving all claims or potential claims against the Bank arising out of my employment, . . . as of this date.

(iii)  I understand that I am receiving valuable consideration as a result of signing this agreement that I would not otherwise be entitled to receive.

. . .

(vii)  . . .  This Agreement and Release will not take effect until seven (7) days after my signing.  In the event that I revoke my acceptance, the Bank has no obligation to pay me the amount or any of the Consideration described in this agreement.

. . .

(ix)  I further understand that if I do not sign this agreement on or before the Termination Date, the Bank's offer of one-half month's salary per year of employment (up to one year's salary), medical and dental insurance at employee rates for one month per year of employment (up to six months) and enhanced retirement benefits will be withdraw as of that date.  In that event, or in the event that I sign this agreement but revoke it within seven days, I will be paid two weeks' salary as severance pay, which in my case is $1,477.69.  In the event that I sign this agreement and revoke it within seven days, I will immediately repay any amount paid to me under this agreement in excess of the amount of two weeks' salary.

(Doc. 39, Ex. B, ex. 3.)

8

On April 20, 2005, defendant filed a Motion to Dismiss plaintiff's claims on the basis of the release.  (Doc. 39.)  On April 29, 2005, the Eleventh Circuit issued its opinion in plaintiff's appeal as a mandate.  (Doc. 40.)

## III. <u>DISCUSSION</u>

Plaintiff contends that the Severance Agreement and General Release did not extinguish his pending discrimination claim because the release is not supported by consideration, there was no mutual assent that his pending discrimination claim would be released, and the release did not require release of his pending claim or preclude future settlement of his pending claim.  He also argues that he could not waive a claim for attorneys' fees and expenses, and that defendant is procedurally barred from raising the release as a defense to his pending claim.  For the reasons set forth below, the court finds that plaintiff's signing of the Severance Agreement and General Release extinguished his pending Title VII claim, and such claim is due to be dismissed.

### A. SETTLEMENT OF TITLE VII CLAIMS

The court notes that "the mere existence of an express waiver [is], of itself, insufficient to show actual waiver [of plaintiff's Title VII claims].   In addition, it [is] necessary to show, 'at the outset', that the waiver was 'voluntary and knowing'." *Watkins v. Scott Paper Co.*, 530 F.2d 1159, 1172-73 (5th Cir. 1976)(citing *Alexander v.*

*Gardner-Denver Co.*, 415 U.S. 36, 52 n.15 (1974)).[2]  The Eleventh Circuit has held, "The waiver of such remedial rights . . . must be closely scrutinized, and a court must look to the totality of the circumstances to determine whether the release is knowing and voluntary." *Bledsoe v. Palm Beach County Soil and Water Conservation Dist.*, 133 F.3d 816, 819 (11th Cir. 1998)(quoting *Puentes v. United Parcel Service*, 86 F.3d 196, 198 (11th Cir. 1996))(internal quotations omitted).  In reviewing the totality of the circumstances, the court considers the following factors:

> [1] the plaintiff's education and business experience; [2] the amount of time the plaintiff considered the agreement before signing it; [3] the clarity of the agreement; [4] the plaintiff's opportunity to consult with an attorney; [5] the employer's encouragement or discouragement of consultation with an attorney; and [6] the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Id.* (citation omitted).

Neither party has mentioned *Alexander* or discussed the *Puentes* factors.  Nevertheless the court finds that its decision as to whether plaintiff can proceed despite signing the waiver must be based on consideration of whether plaintiff signed the release knowingly and voluntarily.

---

[2]Decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981)(en banc).

### 1.  Plaintiff's Education and Business Experience

Plaintiff graduated from high school and went to college for two years.  (Doc. 12, Ex. 9 at 27.)  He worked for defendant for almost 30 years.  Nothing in the record indicates that plaintiff did not possess the capacity to understand the plain language of the waiver and release.

### 2.  Amount of Time Plaintiff Considered the Agreement Before Signing It

The evidence shows that plaintiff had the proposed release and severance agreement 61 days before the date he signed it.  (Doc. 39, Ex. B ¶ 3.)  His counsel was also notified of the terms of the release and severance agreement more than 60 days before plaintiff signed it.  (*Id.*, Ex. A.)  Plaintiff had considerable time to consider the release and severance agreement before signing.

### 3.  Clarity of the Agreement

The court finds that terms of the release are clear.  It states in simple, straightforward, unambiguous terms that plaintiff waives all pending claims arising out of his employment in exchange for enhanced severance benefits.

### 4.  Opportunity to Consult with an Attorney and Defendant's Encouragement or Discouragement of Consultation with an Attorney

Defendant informed plaintiff and his counsel of the involuntary separation and the terms of the severance agreement more than 60 days before the date plaintiff signed the agreement.  Defendant's counsel communicated the terms of the agreement to plaintiff's counsel well in advance of the deadline for signing the agreement.  Although the e-mail of

plaintiff's counsel on March 31, 2005 seems to indicate that plaintiff and his counsel did not discuss the final agreement on that date, nothing indicates that this was due to any action on behalf of defendant or that the lack of review on March 31, 2005, prevented plaintiff from knowingly and voluntarily agreeing to release his pending claim in exchange for increased severance benefits.

**5.  Consideration Given in Exchange for the Waiver Compared with the Benefits to Which the Employee Was Already Entitled**.

As set forth above, plaintiff received a substantially enhanced severance package, including a year's salary and retirement benefits.  If plaintiff had not signed the release and severance agreement he would have received two weeks' pay and no retirement.  The court finds that significant consideration was given in exchange for plaintiff's waiver of his pending claim.

Plaintiff argues that others received the same benefit, even though such other employees did not have pending claims that were released.  However, there is no evidence that any other employee received enhanced severance benefits without signing a release.

The court also notes that the severance benefits received in exchange for signing the release are considerably greater than the severance benefits offered to those who did not sign the release.  The Seventh Circuit stated that "it would be less plausible for [a plaintiff] to argue that he did not appreciate the gravity of the document he executed," if "the waiver had entitled [plaintiff] to the more generous of two severance packages."  *Pierce v. Atchison Topeka and Santa Fe Ry. Co.*, 110 F.3d 431, 441 (7th Cir. 1997).  In exchange for the

release, plaintiff was given a substantially more generous severance package than he would have received had he not signed the release.  Therefore, the court finds that this factor favors finding plaintiff knowingly and voluntarily released his pending discrimination claim in exchange for the more generous severance package.

Based on the foregoing, the court finds that plaintiff's release of his pending claim was knowing and voluntary.

## B.  STATE-LAW CONTRACT DEFENSES TO THE RELEASE

The federal requirement of a knowing and voluntary release "requires a detailed look at the circumstances surrounding execution of the release in addition to, rather than as a replacement for, ordinary contract considerations."  *Pierce v. Atchison, Topeka and Santa Fe Ry. Co.*, 65 F.3d 562, 570 (7th Cir. 1995).  Therefore, the court will consider plaintiff's claims that the release was not supported by consideration, that the parties did  not mutually agree to the release of plaintiff's pending discrimination claim, and that the terms of the release did not require dismissal of his pending claim or preclude settlement of such claim.

### 1.  Consideration

Plaintiff contends that his release is not supported by consideration because "the benefits that [he] received were consideration for a general release of claims that applied to all employees . . ., including those who did not have pending litigation against the Bank." (Doc. 47 at 10.)   Under Alabama law, "[t]he promisee's lawful act of doing something which he is not otherwise compelled to do is sufficient consideration to support the

agreement of the promissor." *Thrash v. Deason*, 435 So. 2d 69, 71 (Ala. 1983)(citing *Roberts v. Lindsey*, 7 So. 2d 82 (Ala. 1942)).  In this case, defendant agreed to pay enhanced severance benefits to each employee that signed the release.  There is no evidence that any employee received enhanced severance benefits without signing the release.  The fact that employees without pending claims received enhanced severance benefits does not support an inference that plaintiff's enhanced severance benefits, obtained because he signed the release, are inadequate consideration for his release.  No evidence has been submitted that plaintiff was entitled to the enhanced severance benefits without signing the release.[3] Therefore, the court finds that the release was supported by adequate consideration.

## 2.  Mutual Assent

Plaintiff has presented extrinsic evidence of the parties' settlement negotiations and argues that this evidence shows that the release was not based upon mutual assent.  He contends:

> [A]t the time of signing, both Myricks and the Bank knew that Myricks was not releasing all of the claims in the instant litigation or the claim for attorney's fees.  Counsel for the Bank, possessed with this knowledge, attended the signing and failed to make any modification to the severance agreement to specifically require release of claims in the instant litigation.
>
> The intent of the parties, which is clear from the circumstances and correspondence in the record between the parties, was that Myricks' claims in this pending lawsuit were to be settled for an amount above and beyond the

---

[3]Under Alabama law, "the consideration need not be adequate in the sense of equality of value to support the release."   See Grimes v. Liberty National Life Ins. Co., 514 So.2d 965 (Ala.1987).

terms of the severance agreement and a meeting of the minds as to the value
of that settlement was not reached at the time the severance agreement was
signed.  Hence, there was no mutual assent to waive and release Myricks'
claims in this pending lawsuit.  As such, Myricks Title VII claims have not
been extinguished.

(Doc. 47 at 13-14.)  Defendant contends that plaintiff cannot rely upon extrinsic evidence to

vary the terms of the release, which "unequivocally released all claims that he might have

against the Bank."  (Doc. 48 at 15-16.)

The Eleventh Circuit has held:

> Under Alabama law, once the parties to a contract have reduced their
> agreement to writing, all prior statements, promises, and negotiations are
> merged into the resulting written document.  *See Guilford v. Spartan Food
> Systems, Inc.*, 372 So. 2d 7 (Ala. 1979)(noting that it is presumed at law that
> "all prior negotiations are merged into the written contract, which purports to
> cover the entire transaction").  In the absence of fraud, mistake, or illegality,
> parol evidence is not admissible to explain, contradict, vary, add to, or subtract
> from the express terms of a complete and unambiguous written agreement.
> *See Lake Martin/Alabama Power Licensee Assoc., Inc. v. Alabama Power Co.,
> Inc.*, 601 So. 2d 942, 945 (Ala. 1992).
>
> . . .
>
> Under Alabama law, extrinsic evidence relating to the alleged "true
> intent" of the parties is not admissible if the written document is clear and
> unambiguous.  *See, e.g., Kerrigan v. Sherrer*, 535 So. 2d 74, 75–76 (Ala.
> 1988)("[A]bsent a finding of ambiguity, it was improper for the trial court to
> consider evidence  . . . [of the alleged] true intentions of the parties . . . .");
> *Darling Shop of Birmingham v. Nelson Realty Co.*, 52 So. 2d 211 (Ala.
> 1951)("[I]n the absence of ambiguity the court cannot interpret the contract but
> must take it as it is written.").  However, resort to parol evidence is proper to
> show that the contract language contains a "latent ambiguity."  *Cathbake
> Investment Co. v. Fisk Electric Co., Inc.*, 700 F.2d 654, 656 (11th Cir.
> 1983)(applying Alabama law).  "An ambiguity is latent when the language
> employed is clear and intelligible and suggests but a single meaning, but some
> extrinsic fact or extraneous evidence creates a necessity for interpretation or

a choice among two or more possible meanings." *Thomas v. Principal Financial Group*, 566 So. 2d 735 (Ala. 1990).  If a latent ambiguity exists, parol evidence may be admitted for the purpose of explaining or clarifying the language revealed to be ambiguous, but not for the purpose of uncovering the parties' alleged "true intent." *See Gafford v. Kirby*, 512 So.2d 1356, 1363 (Ala. 1987)(where a latent ambiguity exists, parol evidence is admissible "to clear up that ambiguity").  As the Supreme Court of Alabama explained:

> Such evidence is received, not for the purpose of importing into the writing an intention not expressed therein, but simply with the intention of elucidating the meaning of the words employed; and in its admission, the line which separates evidence which aids the interpretation of what is in the instrument, from direct evidence of intention independent of the instrument, must be kept steadily in view; the duty of the court being, to declare the meaning of what is written in the instrument, not of what was intended to be written.

*Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 795-96 (11th Cir. 1996)(quoting

*Gibson v. Anderson*, 92 So. 2d 692, 695 ( Ala. 1957)).

The court has carefully reviewed the evidence of the settlement negotiations and finds

that such evidence, as a matter of law, does not reveal a latent ambiguity in the terms of the

16

release.[4]  The release clearly and unambiguously waived plaintiff's pending claim against

defendant.

### 3.  Terms of the Severance Agreement and General Release

Plaintiff argues that his claim against defendant is not barred by his release because

another former employee of defendant subsequently settled with defendant after she had

signed a severance agreement.  He contends:

> Margaret Thomas, a former employee of the Bank, signed a severance
> agreement in 2002 with the Bank.  Just as Myricks did, she received severance
> pay and released the Bank from any claims she may have had.  On March 11,
> 2003, however, Thomas filed a lawsuit against the Bank alleging
> discriminatory employment actions that took place in 2002.  Notwithstanding
> the release Thomas had signed, the Bank settled Thomas' claims.  Hence, it is

---

[4]The court notes that the communications between counsel for the parties indicates
that the deadline for resolving plaintiff's pending claim was March 31, 2005, the date
plaintiff's job was eliminated.  (*See* doc. 39, Ex. A (letter from defendant's counsel to
plaintiff's counsel stating that plaintiff's job will be eliminated on March 31, 2005, and that
plaintiff "will be offered a severance package that requires the release of all claims
[including] the current case against the Bank as well as the EEOC charges he has filed"); *id.*,
Ex. C (letter from defendant's counsel to plaintiff's counsel stating, "I want to make sure
then is no misunderstanding about this.  If Mr. Myricks does not sign the severance
agreement and release, he will not only lose the lump sum amount of $38, 420.000 and health
insurance at employee rates . . . , but he will also forever lose the opportunity to retire with
80 points.  The enhanced severance benefits . . . cannot and will not be available after March
31."); doc. 47, Ex. 1 (letter from plaintiff's counsel to defendant's counsel stating, "Since
you have conveyed the bank's position that it cannot extend the offer to award additional
service credits beyond March 31, 2005, I think it is incumbent upon everyone to make sure
that we explore all sensible routes prior to the March 31, 2005 deadline."); *id.*, Ex. 5 (e-mail
from plaintiff's counsel to defendant's counsel stating, "Mr. Myricks has decided not to
accept the Bank's final settlement proposal.  I understand that he intends . . . to sign the
severance agreement.  We'll have to figure our where this leaves us.  This firm takes the
position that Mr. Myricks cannot waive or release the firm's entitlement to any fees or
expense recoupment associated with the litigation.").)

clear from the Bank's course of dealing with other employees, that a separate settlement can be obtained by an employee even after signing a severance agreement and release. Consequently, it was not the intent of the parties to waive or release Myricks claims in this lawsuit.

(Doc. 47 at 14-15 (internal citations omitted).)

The court finds the existence of Thomas's lawsuit and subsequent settlement is not relevant to whether plaintiff waived his pending claims against defendant by signing the Severance Agreement and General Release. The court does not dispute plaintiff's argument that defendant *could* settle plaintiff's claim even after he signed a release. However, defendant has no *legal* obligation to do so because, in this case, the terms of the Severance Agreement and General Release are clear and unambiguous. Therefore, the fact that the bank may have settled a similar case which may or may not have been barred by a valid release, has no relevance to the bank's decision in this case to seek a dismissal of plaintiff's remaining claim based on the release executed by plaintiff when his employment was terminated. *See Reeves Cedarhurst Development Corp. v. First Amfed Corp.*, 607 So.2d 184, 187 (Ala. 1992)("Because the circumstances surrounding the contract are considered only where the terms are ambiguous, we do not consider evidence of the parties' intentions or course of dealing.").

## C. PROCEDURAL BAR

In addition to his contract defenses, plaintiff claims that defendant's Motion to Dismiss is procedurally barred.  He contends:

> The Bank's motion is in essence a petition to enforce a settlement agreement that would, in the Bank's opinion, extinguish all of Myricks's Title VII claims.  As such, a motion to dismiss is not the proper method for raising that issue.  First, the dispositive motion deadline has passed.  Furthermore, Rule 8(c) clearly sets forth that the defenses of "release" and "waiver" are affirmative defenses.  Fed. R. Civ. P. 8(c).  The pleading of an affirmative defense is mandated by Rule 8(c) to be presented in a responsive pleading, and "a party waives its right to advance an affirmative defense by failing to assert it in such."  *Steger v. General Elec. Co.*, 318 F.3d 1066, 1077 (11th Cir. 2003)(citing *American Nat'l Bank of Jacksonville v. FDIC*, 710 F.2d 1528, 1537 (11th Cir. 1983)).  The deadline for amending the Answer has likewise passed and the Bank has waived any defense of release and waiver.

(Doc. 47 at 16.)  The court disagrees.

Plaintiff signed the General Release on March 31, 2005; defendant filed its Motion to Dismiss on April 20, 2005.   The court finds that defendant raised the defense at "at a pragmatically sufficient time," and plaintiff has not been "prejudiced in [his] ability to respond."  *See Lucas v. United States,* 807 F.2d 414, 417 (5th Cir.1986)(quoting *Allied Chemical Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983)); *see also Davignon v. Clemmey*, 322 F.3d 1, 15 (1st Cir. 2003)("There are certain exceptions to the Rule 8(c) bar which might be invoked . . . either where (i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay . . . or (ii) **[the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed**.")](emphasis added).  Here, the circumstances necessary to establish entitlement

19

to the affirmative defense of release were not present at the time defendant filed its answer. Therefore, the court finds that defendant is not procedurally barred from raising the affirmative defense of release at this time.

Further, the court finds that the dispositive deadline poses no impediment to defendant's Motion to Dismiss. Again, the court notes that the release was signed while this case was on appeal, after summary judgment had been granted by this court. Clearly, the parties are not limited by the court's prior 16(b) Order on remand from the Eleventh Circuit. Moreover, the court is not barred by the mandate of the Eleventh Circuit from dismissing this case based on the General Release. *See Jackson v. State of Alabama State Tenure Commission*, 405 F.3d 1276, 1285 (11th Cir. 2005)(district court not precluded by law of the case from entering summary judgment after remand because summary judgment based on "[d]ifferent evidence, different issues").

Based on the circumstances of this case, the court finds that defendant is not procedurally barred from moving to dismiss plaintiff's claims based on the General Release.

## D.  WAIVER OF ATTORNEY FEES

Plaintiff argues that his agreement with his counsel prohibits him from waiving a claim for attorney fees and costs. Title VII provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs . . . ." 42 U.S.C. § 2000e-5(k). "[I]n order to be considered a prevailing party . . ., there must be a

"court-ordered . . . 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Smalbein ex rel. Estate of Smalbein v. City of Daytona Beach*, 353 F.3d 901, 904 (11th Cir. 2003)(quoting *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 604 (2001)(quoting *Tex. State Teachers Ass'n. v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989))). Therefore, "there must be: (1) a situation where a party has been awarded by the court at least some relief on the merits of his claim or (2) a judicial imprimatur on the change in the legal relationship between the parties." *Id.* at 905 (internal quotations omitted).

Plaintiff cites the court to *Torres v. Metropolitan Life Insurance*, 189 F.3d 331 (3d Cir. 1999) for the proposition that plaintiff did not expressly waive his claim for attorney fees, and, therefore, such claim is not waived. The *Torres* court held, "If parties wish to extinguish a claim for attorney's fees, they must do so specifically and expressly within the terms of the settlement agreement." *Id.* at 334-35. The defendant in *Torres* did "not dispute that [plaintiff] qualifie[d] as a prevailing party." *Id.* at 333. However, after *Buckhannon*, it is clear that Torres was not a prevailing party because he did not receive a "court-ordered material alteration of [his] legal relationship" with defendant. Therefore, the requirement of an express waiver of attorney fees is limited to cases in which a plaintiff is a "prevailing party," as defined in *Buckhannon*. This is not such a case.

Because plaintiff waived his pending claim without any "court-ordered material alteration of the legal relationship," he is not and cannot be found to be a prevailing party.

21

Therefore, his assignment of his right to seek attorney's fees to his counsel does not bar dismissal of his pending claim based on the General Release.

<b><u>CONCLUSION</u></b>

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion to Dismiss, which the court has treated as a Motion for Summary Judgment, will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 6th day of February, 2006.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE